**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| MAX DRYERMAN, a single adult; CARRIE CHALUP, as Executrix of the ESTATE OF DAVID W. DRYERMAN, Deceased; RENEE LITWIN, as Executrix of the ESTATE OF MICHELE D. DRYERMAN, Deceased, and as Administratrix Ad Prosequendum of the Estate of BROOKE H. DRYERMAN, Deceased, | CIVIL ACTION<br><br>Case No.:    2:25-cv-11997 |
| Plaintiffs, | |
| v. | JURY TRIAL DEMANDED |
| TESLA, INC., | |
| Defendant. | |

**AMENDED COMPLAINT (as a Matter of Course)**

Plaintiffs, Max Dryerman, Carrie Chalup, as Executrix of the Estate of David W. Dryerman, Deceased, Renee Litwin, as Executrix of the Estate of Michele D. Dryerman, Deceased, and Renee Litwin, as Administratrix Ad Prosequendum of the Estate of Brooke H. Dryerman, Deceased, by and through their undersigned counsel, ANAPOL WEISS, hereby submit the following Amended Complaint and Demand for Jury Trial against Defendant Tesla, Inc. (filed within 21 days of service and before an Answer has been filed) and allege the following upon personal knowledge and belief, and investigation of counsel:

**PARTIES**

1.      Plaintiff, Max Dryerman, is an adult individual who resides at 30 Heatherhill Lane, Woodcliff Lake, New Jersey 07677. Plaintiff is the son of Decedents David W. Dryerman and Michele D. Dryerman, and the brother to his sister Decedent Brooke H. Dryerman (who was a

minor at the time of her death), and brings this action pursuant to the Wrongful Death Act of the State of New Jersey, N.J.S.A. 2A:31-1 et seq., for all damages and losses to Plaintiff caused by the deaths of his parents and sister.



2.     On October 18, 2024, the Surrogate's Office of Bergen County, New Jersey appointed Carrie Chalup as Executrix of the Estate of David W. Dryerman and brings this action pursuant to the Survivorship Statute of the State of New Jersey, N.J.S.A. 2A:15-3 et. seq., for all injuries and damages for which the Decedent David W. Dryerman could pursue recovery had he survived, as described below.

3.     On January 27, 2025, the Surrogate's Office of Bergen County, New Jersey appointed Renee Litwin as Administratrix Ad Prosequendum of the Estate of Brooke H. Dryerman and brings this action pursuant to the Survivorship Statute of the State of New Jersey, N.J.S.A. 2A:15-3 et. seq., for all injuries and damages for which the Decedent B.D. could pursue recovery had she survived, as described below.

4.     On February 10, 2025, the Surrogate's Office of Bergen County, New Jersey appointed Renee Litwin as Succeeding Executrix of the Estate of Michele D. Dryerman and brings this action pursuant to the Survivorship Statute of the State of New Jersey, N.J.S.A. 2A:15-3 et.

seq., for all injuries and damages for which the Decedent Michele D. Dryerman could pursue recovery had she survived, as described below.

5.    At all times relevant hereto, the decedents, David W. Dryerman, Michele D. Dryerman, and Brooke H. Dryerman, resided at 30 Heatherhill Lane, Woodcliff Lake, New Jersey 07677.

6.    At all times relevant hereto, the decedent, David W. Dryerman, was the owner of a 2024 Tesla Model S Sedan (VIN: 5YJSA1E56RF542606) (hereinafter referred to as the "Tesla Model S"), which is the subject of this lawsuit. On or about August 24, 2024, the defendant Tesla Inc. delivered the Tesla Model S to David W. Dryerman at the defendant's business center, showroom, and service center in Cherry Hill (Camden County), New Jersey.

7.    Defendant Tesla, Inc. (hereinafter referred to as "Tesla") is a business entity incorporated in the State of Delaware. Tesla is in the business of designing, manufacturing and selling automobiles. It has its principal place of business at 1 Tesla Road, Austin, Texas 78725.

8.    At all times relevant hereto, the Tesla defendant has been and continues to market Tesla vehicles and carry-out continuous and substantial business in the state of New Jersey, including in Camden County. Defendant Tesla, Inc. offered for sale and delivered its products to consumers in New Jersey, including the decedent, at its offices located at 1605 Route 70 West, Cherry Hill, New Jersey. Tesla's Registered Agent for service of process in New Jersey is The Corporation Trust Company, 820 Bear Tavern Road, Trenton, New Jersey 08628.

9.    Defendant Tesla designs, develops, manufactures, tests, markets, distributes, sells, and leases vehicles under the brand name "Tesla." The defendant provides after-sale products to vehicles it sells including periodic over-the-air updates for advanced driver assistance systems ("ADAS") software in Tesla vehicles. Tesla was the manufacturer of the Tesla Model S Sedan that is the subject

3

of this lawsuit.

**PERTINENT BACKGROUND INFORMATION**

10.     In 2014, the defendant Tesla began equipping vehicles with ADAS technology. Specifically, Tesla began equipping vehicles with hardware that was intended to allow the vehicles to automate some steering, braking, and acceleration functions, although the software to control those functions was not yet available.

11.     Based on publicly available information, in or about 2014 or 2015, Tesla changed the name of its ADAS to "Autopilot" because Tesla officers and directors believed the public would associate this term with truly self-driving cars, and that the perception Tesla was making self-driving vehicles would increase sales, attract investments, and drive up Tesla's stock price.

12.     As a result, at all times relevant hereto, Tesla marketed its ADAS technology under various names, including "Autopilot," "Enhanced Autopilot," "Full Self-Driving Capability," and/or "Full Self-Driving Supervised," all of which intentionally—and falsely—imply that the vehicles equipped with such software can operate autonomously with little to no driver supervision, responsibility, and control, including during emergency driving situations.

13.     In October 2015, Tesla released its version 7.0 software, which enabled "Autopilot" on Model S vehicles. By December 2015, Tesla's owner and CEO, Elon Musk, stated publicly that Tesla vehicles would have complete autonomy and drive themselves within about two years.

14.     In January 2016, Musk publicly announced that "Autopilot" was "probably better" than a human driver. He further represented that Tesla vehicles would be able to drive significantly better than humans within two to three years, and that within approximately two years drivers would be able to use Tesla's "Summon" feature, which allows drivers to remotely instruct their vehicle to drive to a specified location, or summon a vehicle from the other side of the country.

4

15.     As a result of the above representations, and others, thousands of Tesla drivers have relied on Tesla's ADAS technology as though it were capable of safe, fully autonomous self-driving with minor software updates when in fact it is incapable of safely handling a variety of routine roadway scenarios without driver input, or the system can become confused by what is in front of it, and reports continue to come in that Tesla vehicles have crashed into other vehicles and stationary objects after accelerating without driver input.

16.     Since 2016, Tesla has touted that "the safety of its vehicles' is much greater" when its vehicles are operated on Autopilot versus when Autopilot is off. In addition to Tesla's affirmative statements, the defendant responds to consumer reports about problems with Tesla's "Autopilot" feature, including, but not limited to crashes, unintended acceleration, improper lane changes, and unintended braking, to name just a few, by falsely reassuring customers that the "Autopilot" feature worked as intended.

17.     There have been a number of crashes and deaths involving "Autopilot" mode and malfunctions thereof reported to the National Highway Transportation Safety Administration (NHTSA). Upon information and belief, as discovery may show, the systems do not work well and may cause crashes or fail to properly respond to programmed circumstances which should cause the ADAS to provide protection.

18.     The subject 2024 Tesla Model S was equipped with ADAS features, which Tesla refers to as "Autopilot" and "Full Self-Driving Capability." According to Tesla, Inc.'s Owner's Manual (website), the Tesla S model included these features:

- **Automatic Emergency Braking:** Detects cars or obstacles that the vehicle may impact and applies the brakes accordingly.

- **Auto Lane Change**

- **Forward Collision Warning:** Warns of impending collisions with slower moving or stationary vehicles.

- **Side Collision Warning**

- **Obstacle Aware Acceleration:** Automatically reduces acceleration when an obstacle is detected in front of your vehicle.

- **Lane Departure Avoidance:** Applies corrective steering to keep your vehicle in the intended lane.

- **Emergency Lane Departure Avoidance:** Steers your vehicle back into the driving lane when it detects that your vehicle is departing its lane and there could be a collision.

- **Autosteer:** Assists in steering within a marked travel lane.

- **Full Self-Driving (Supervised)**

19.     The subject Tesla was purportedly designed and equipped with the afore-described Auto-Pilot safety features and "Collision Avoidance Assist" features including Forward Collision Warning, Automatic Emergency Braking and Obstacle-Aware Acceleration. The defendant provided owners with representations of the performance and effectiveness of these safety features. Consumers, including the decedent David Dryerman, read and relied upon these representations.

20.     Based upon information and belief, the Tesla S model in question was designed to also include safety features such as "In-Path Stationary Object (IPSO) Braking and Pedal Misapplication Mitigation", which purportedly reduces the risk of unintended acceleration caused by misapplication of the accelerator pedal.

21.     At all relevant times, Defendant Tesla had advertised and marketed its vehicles in a manner that has caused consumers, including the decedent David Dryerman, to believe that the Tesla is crashworthy, stating:

> Model S, Model 3, Model X and Model Y have achieved among
> the lowest overall probability of injury of any vehicles ever tested
> by the U.S. government's New Car Assessment Program. Much of
> this has to do with the rigid, fortified structure of the battery pack
> that is mounted to the car's floor, which provides a vehicle with
> exceptional strength, large crumple zones, and a uniquely low
> center of gravity. Because of their strength, Tesla's battery packs
> rarely incur serious damage in accidents.
> https://www.tesla.com/VehicleSafetyReport

22.     Defendant Tesla has warranted that its vehicles are crashworthy in frontal impact

crashes.

23.     Tesla's failure to produce the subject Model S with the ability to absorb

reasonable collision forces and with adequate occupant protection systems is inexplicable,

negligent, reckless, and rendered the vehicle not crashworthy and unreasonably dangerous and

defective.

24.     Defendant Tesla failed to provide adequate warnings advising decedent David W.

Dryerman of the dangers of the subject model vehicle but instead misrepresented the vehicle as

safe in these regards.

25.     Due to defects in the design and/or manufacture of the systems, components or

parts (as detailed below), features in the 2024 Tesla Model S failed to activate or did not

correctly operate to maintain the subject Tesla Model S within its lane of travel, failed to detect

that the vehicle was departing its lane, did not steer the vehicle back into the driving lane, did not

apply corrective steering to keep the vehicle in its intended lane, failed to detect and warn of the

stationary object in front of the vehicle (a bridge support), or failed to reduce the risk of

unintended acceleration caused by misapplication of the accelerator or failed to activate the

brakes to bring the vehicle to a stop, and/or failed to provide audible warnings and autonomous

emergency braking to stop the vehicle and prevent it from crashing into the bridge support.

26.     As a result of the defective and unreasonably dangerous design of the 2024 Tesla Model S, the vehicle failed to remain in its lane of travel and failed to detect, warn, and apply emergency braking to stop the car and prevent the vehicle from colliding with the concrete bridge support.

27.     As the Tesla traveled off the roadway and out of control and toward the bridge abutment, each of the decedents experienced fright, emotional distress and stress from a reasonable fear of immediate personal injury resulting in pain and suffering in anticipation of each of their impending deaths.

28.     As set forth in detail below, the collision that caused the death of each of the decedents, and the losses and damages to the Plaintiff Max Dryerman as a result of the decedents' deaths, was the result of the defective design and negligent design of the ADAS technology described below and the decedents' fatal injuries were also caused by the failure to design and market a crashworthy vehicle (as described below).

## JURISDICTION & VENUE

29.     This Court has subject matter jurisdiction over this case pursuant to diversity jurisdiction prescribed by 28 U.S.C. § 1332 because the matter in controversy exceeds the sum value of $75,000, exclusive of interest and costs, and there is complete diversity between the parties.

30.     At all times relevant hereto, Defendant Tesla has and continues to conduct business in Camden County, New Jersey, with offices at 1605 Route 70 West, Cherry Hill, New Jersey. Defendant Tesla carries out via its agents substantial marketing activities including but not limited to:

a.     Selling and/or delivering defective motor vehicles in the state of New Jersey

and Camden County;

b.    Selling, distributing, and servicing Tesla vehicles and their component parts and systems to or for persons, firms and/or corporations in this state and county via its Tesla stores and service centers. Such Tesla vehicles were used by New Jersey consumers in the ordinary course of commerce and trade;

c.    The acts or omissions of said Defendant caused injuries to persons in New Jersey, including Plaintiffs' decedents David Dryerman, Michele Dryerman, and Brooke H. Dryerman, and Plaintiff Max Dryerman; and

d.    By engaging in the solicitation of activities in New Jersey to promote the sale, use, and distribution of Tesla vehicles, including the 2024 Tesla Model S which is the subject of this Complaint.

31.    Venue is proper in this Court pursuant to U.S.C. § 1391 because Defendant Tesla has sufficient minimum contacts with the State of New Jersey and intentionally availed itself of the markets within New Jersey through its Tesla Store and Service Center, located at 1605 Route 70 West, Cherry Hill (Camden County), New Jersey 08002, and through the promotion, sale, marketing, and distribution of Tesla vehicles.

## STATEMENT OF MATERIAL FACTS REGARDING THE COLLISION

32.    Plaintiffs incorporate and restate the foregoing paragraphs by reference as if the same were fully set forth herein.

33.    On September 14, 2024, the decedent David W. Dryerman was the seat belted operator of the Tesla Model S traveling north on Garden State Parkway in Woodbridge Township, New Jersey. Decedent, Michele D. Dryerman was the seat belted occupant in the front right passenger seat and Decedent, Brooke H. Dryerman, was the seat belted occupant in the left rear

seat of the Tesla Model S. These three members of the Dryerman family were driving home after attending an outdoor concert.

34.    While driving northbound on the Garden State Parkway near Milepost 131.1, the Tesla S was caused to leave its lane of travel, traverse a segment of the adjacent grassy shoulder and collide with a concrete bridge support.

35.    The movement of the Tesla S occurred—according to the Tesla EDR records—as the "Accelerator Pedal (%)" went from 0.0 (with a speed of 63 mph) to 100.0 without any significant change in vehicle speed and without any reported "Service Brake" recording.

36.    The collision between the Tesla S and the bridge abutment resulted in a change of acceleration that caused the seatbelt and airbag systems to deploy. Each of the decedents suffered catastrophic fatal injuries because of defects in the vehicle's crashworthy design including the restraint systems each was wearing and as further detailed below.

**COUNT ONE**

**PURSUANT TO THE NEW JERSEY PRODUCTS LIABILITY ACT**
**(N.J.S.A. § 2A:58C-1 et. seq.)**

**SURVIVORSHIP ACTION**

37.    Plaintiffs incorporate and restate the foregoing paragraphs by reference as if the same were fully set forth herein.

38.    Plaintiffs Carrie Chalup, as Executrix of the Estate of David W. Dryerman, and Renee Litwin, as Succeeding Executrix of the Estate of Michele D. Dryerman, and Administratrix Ad Prosequendum of the Estate of Brooke H. Dryerman, bring this survivorship claim for all losses and damages sustained by the decedents pre-death, seeking both compensatory and punitive damages.

39.    This Count is brought pursuant to N.J.S.A. § 2A:58C-1 et. seq., the New Jersey

Products Liability Act ("NJPLA").

40.     Defendant Tesla designed, developed, manufactured, engineered, researched, tested, approved, assembled, fabricated, installed, equipped, updated, marketed, advertised, distributed, sold, and/or supplied the subject Tesla Model S Sedan, its ADAS, and component parts.

41.     Defendant Tesla, under all applicable laws including, but not limited to, the NJPLA, N.J.S.A. § 2A:58C-1 et. seq., is liable to Plaintiffs for the damages and losses to the decedents' Estates (pursuant to the Survival Act, N.J.S.A., § 2A:15-3) for designing, manufacturing, assembling, marketing, distributing, and/or selling the subject Tesla Model S that was unreasonably dangerous in in design and because of inadequate autonomous warnings and/or because the Tesla Model S did not conform to the implied and express warranties of the manufacturer about this product.

42.     The 2024 Tesla Model S was defective and unreasonably dangerous and Defendant Tesla is strictly liable under the NJPLA, both generally and for one or more of the following reasons (other reasons may be revealed during the pre-trial discovery obtained in this case):

   a.     The Tesla Model S was not safe for its intended and foreseeable uses;

   b.     The Tesla Model S was defective because its Forward Collision Warning failed to warn of an impending collision with a stationary obstacle;

   c.     The Tesla Model S was defective because its Lane Departure Avoidance failed to take corrective steering to keep the vehicle in its  intended lane;

d.   The Tesla Model S was defective because its Emergency Lane Departure Avoidance failed to steer the vehicle back into the driving lane when it detected the vehicle was departing its lane and there could be a collision;

e.   The Tesla Model S was defective because Autosteer failed to assist in steering the vehicle within its marked travel lane;

f.   The Tesla Model S was defective because its Obstacle Aware Acceleration and/or Pedal Misapplication Mitigation failed to prevent the Tesla from accelerating into a stationary obstacle;

g.   The Tesla Model S was defective because its Side Collision Warning failed to warn of a potential collision with the guardrail alongside the vehicle;

h.   The Tesla Model S was defective because its Automatic Emergency Braking failed to activate the brakes to prevent the vehicle from colliding with a stationary obstacle;

i.   The Tesla Model S was defective because it continued forward and/or accelerated without the intent or control input of decedent David W. Dryerman;

j.   The Tesla Model S was defective because despite the vehicle camera system should have detected an approaching stationary obstacle, the vehicle continued—without braking or reduction in acceleration or engine torque—into the stationary obstacle;

k.   The Tesla Model S was not crashworthy such that it was unable to absorb reasonable and foreseeable collision forces, and lacked adequate occupant protection systems;

l.   Designing, manufacturing, distributing, and selling the subject vehicle with a defective and unsafe Obstacle Aware Acceleration System;

m.   Designing, manufacturing, distributing, and selling the subject vehicle with a defective and unsafe Pedal Misapplication Mitigation System;

n.   Designing, manufacturing, distributing, and selling the subject vehicle with a defective and unsafe "Autopilot" and/or Automatic Emergency Braking System;

o.   Designing, manufacturing, distributing, and selling the subject vehicle a defective and unsafe braking system;

p.   Designing, manufacturing, distributing, and selling the subject vehicle with a defective and unsafe acceleration system;

q.   Designing, manufacturing, distributing, and selling the subject vehicle in a non-crashworthy condition;

r.   The subject vehicle did not meet or perform to the expectations of end consumers, users, or ordinary consumers;

s.   The subject vehicle did not meet or perform to the expectations of reasonable consumers;

t.   The risks inherent in the subject vehicle's safety features as designed outweighed its benefits, and reasonable alternative designs would, at reasonable cost, have reduced the foreseeable risks of harm posed by the subject vehicle; and

   u.  The subject vehicle lacked adequate warnings and/or instructions of

     the dangers and hazardous and defective condition of the vehicle;

   v.  Defendant Tesla misrepresented the safety of the subject vehicle.

43. To the extent the "Autopilot" and/or self-driving features were engaged, they either malfunctioned or were defectively designed and caused or contributed to the subject crash. It is further alleged that the "Autopilot"/self-driving systems in the vehicle were not sufficiently developed or tuned and users were not sufficiently warned of the dangers and limitations of these features or systems.

44. The "Autopilot" and/or self-driving features and systems installed in the Tesla Model S were improperly designed and failed to function properly and/or contained design and/or manufacturing defects.

45. Had the "Autopilot" features and systems on the Tesla Model S been properly designed, tuned and/or updated, the vehicle would have remained in its lane of travel, would have detected the obstacle in front of the vehicle (bridge support), issued an audible warning to the decedent David W. Dryerman, and if the decedent failed to respond, the vehicle would have actively braked without driver input to prevent the collision that killed Plaintiffs' decedents and caused the losses and other damages to the Plaintiff Max Dryerman and the decedents' estates.

46. The subject Tesla Model S, its "Autopilot" and/or self driving features or systems, structural components, and/or occupant protection systems failed to meet the expectations of the reasonable consumer or user. Based on the representations of Tesla, an ordinary consumer or user would have expected the subject vehicle and the systems and components described herein to have appropriately detected, responded and/or operated to avoid or mitigate the subject collision and/or the injuries, losses, and damages arising therefrom.

47.     At the time the subject Tesla Model S left defendant Tesla's possession it was in a defective condition, was unreasonably dangerous when used in a reasonably foreseeable matter, and was not fit, suitable, or safe for its intended purposes. The subject Model S therefore constituted a defective product under the New Jersey Product Liability Act (consolidating the cause of action for negligence, strict liability, and implied warranty into a single product liability cause of action) rendering Tesla strictly liable to the Plaintiffs.

48.     Practical and feasible alternative designs existed that would have reduced or prevented the harm suffered and that due to the improperly designed or omitted safer alternative, the product was not reasonably safe as manufactured and sold.

49.     Reasonable consumers, including the decedents, David Dryerman, Michele Dryerman, and Brooke Dryerman, would not have reason to expect that the subject vehicle would fail to remain in its lane of travel and fail to detect, warn, and apply emergency braking to stop the car and prevent the vehicle from colliding with the concrete bridge support; and they would not have been able to detect any such defects, and would not have any knowledge as to how to prevent the failures described herein from occurring.

50.     The 2024 Tesla Model S contained a myriad of defects in both design and/or manufacture, did not perform as an ordinary consumer would reasonably expect, its design risks outweighed its benefits, and the 2024 Tesla Model S was not sufficiently crashworthy in the event of a foreseeable crash, among other things, and led to the fatal injuries suffered by David W. Dryerman, Michele D. Dryerman, and Brooke H. Dryerman, and the losses and damages suffered by their Estates as a result of their deaths, including both tangible and intangible compensatory damages. The plaintiffs seek punitive damages pursuant to the New Jersey Survival Action and N.J.S.A. § 2A:15-5.12 et. seq., the New Jersey Punitive Damages Act.

51.     Defendant Tesla had a subjective appreciation of the risk of harm to which the Plaintiffs' decedents were exposed, and the defendant acted, or failed to act, in conscious disregard of that risk.

52.     Defendant Tesla is guilty of reckless disregard for the safety of others, including the Plaintiffs' decedents, both generally and in the following respects:

   a.     Intentionally, recklessly, and wantonly misrepresenting the effectiveness of Tesla's ADAS technology, including "Autopilot," "Enhanced Autopilot," "Full Self-Driving Capability," and/or "Full Self-Driving Supervised";

   b.     Knowingly and falsely implying that Tesla vehicles equipped with such software can operate autonomously with little to no driver supervision, responsibility, and control, including during emergency driving situations;

   c.     Intentionally, recklessly, and wantonly misrepresenting the effectiveness of the 2024 Tesla Model S's ADAS technology;

   d.     Intentionally, recklessly, and wantonly designing, manufacturing, marketing, distributing and selling the 2024 Tesla Model S with a defective and unsafe Obstacle Aware Acceleration System;

   e.     Intentionally, recklessly, and wantonly designing, manufacturing, marketing, distributing and selling the 2024 Tesla Model S with a defective and unsafe Pedal Misapplication Mitigation System;

   f.     Intentionally, recklessly, and wantonly designing, manufacturing, marketing, distributing and selling the 2024 Tesla Model S with a defective and unsafe Automatic Emergency Braking System;

g.     Intentionally, recklessly, and wantonly designing, manufacturing, marketing, distributing and selling the 2024 Tesla Model S with a defective and unsafe braking system;

h.     Intentionally, recklessly, and wantonly designing, manufacturing, marketing, distributing and selling the subject vehicle with a defective and unsafe acceleration system;

i.     Intentionally, recklessly, and wantonly marketing, promoting, and misrepresenting that the Telsa Model S was crashworthy in foreseeable crashes;

j.     Intentionally, recklessly, and wantonly designing, manufacturing, marketing, distributing and selling the subject vehicle in a non-crashworthy condition;

k.     Intentionally, recklessly, and wantonly misrepresenting the safety of the 2024 Tesla Model S.

l.     Intentionally, recklessly, and wantonly withholding adequate warnings or instructions of the dangers and hazardous and defective condition of the 2024 Tesla Model S;

m.     Intentionally, recklessly, and wantonly misrepresenting the expected performance of "Autopilot"; and

n.     Intentionally, recklessly, and wantonly making a corporate decision regarding safe vehicle designs based on economic criteria instead of design/safety criteria.

17

53.     Defendant Tesla knew, realized, or should have reasonably known or realized that it created an unreasonable risk of causing physical harm to another by the design of the Tesla Model S and failed to exercise the necessary care to prevent such risk from taking place.

54.     Defendant Tesla's wrongful conduct in design and manufacture of the 2024 Tesla Model S was guided by either actual malice or wanton disregard for public safety.

55.     Defendant Tesla breached its duty to the Plaintiff and the Plaintiffs' decedents by consciously disregarding a substantial risk that their conduct and the design of the 2024 Tesla Model S would significantly injure the rights of others.

56.     The injuries, losses, expenses, and damages suffered are the result of Defendant Tesla's egregious conduct, thereby warranting imposition of punitive damages against this defendant.

## COUNT TWO

## PURSUANT TO THE NEW JERSEY PRODUCTS LIABILITY ACT
## (N.J.S.A. § 2A:58C-1 et. seq.)

## WRONGFUL DEATH

57.     Plaintiffs incorporate and restate the foregoing paragraphs by reference as if the same were fully set forth herein.

58.     Decedents David W. Dryerman, Michele D. Dryerman, and Brooke H. Dryerman are survived by their son and brother, Max Dryerman, who by reason of Defendant Tesla's conduct as set forth herein and by reason of the wrongful deaths of his parents and sister, brings this action for his own losses and damages caused by the wrongful deaths of his parents and sister.

59.     This Count is brought pursuant to N.J.S.A. § 2A:58C-1 et. seq., the New Jersey Products Liability Act ("NJPLA").

60.    Defendant Tesla, under all applicable laws including, but not limited to, the NJPLA, N.J.S.A. § 2A:58C-1 et. seq., is liable unto Plaintiff Max Dryerman for the wrongful deaths of his parents and sister (pursuant to the Wrongful Death Act, N.J.S.A., § 2A:31-1) for designing, manufacturing, assembling, marketing, distributing, and/or selling the subject Tesla Model S that was unreasonably dangerous in construction or composition, in design, because inadequate warnings about the product had not been provided, and/or because the Tesla Model S did not conform to the implied and express warranties of the manufacturer about this product.

61.    The 2024 Tesla Model S is defective and unreasonably dangerous and Defendant Tesla is strictly liable under the NJPLA, for one or more of the following reasons:

    a.    The Tesla Model S was not safe for its intended and foreseeable uses;

    b.    The Tesla Model S was defective because its Forward Collision Warning failed to warn of an impending collision with a stationary obstacle;

    c.    The Tesla Model S was defective because its Lane Departure Avoidance failed to take corrective steering to keep the vehicle in its intended lane;

    d.    The Tesla Model S was defective because its Emergency Lane Departure Avoidance failed to steer the vehicle back into the driving lane when it detected the vehicle was departing its lane and there could be a collision;

    e.    The Tesla Model S was defective because Autosteer failed to assist in steering the vehicle within its marked travel lane;

    f.    The Tesla Model S was defective because its Obstacle Aware Acceleration and/or Pedal Misapplication Mitigation failed to prevent the Tesla from accelerating into a stationary obstacle;

g.    The Tesla Model S was defective because its Side Collision Warning failed to warn of a potential collision with the guardrail alongside the vehicle;

h.    The Tesla Model S was defective because its Automatic Emergency Braking failed to activate the brakes to prevent the vehicle from colliding with a stationary obstacle;

i.    The Tesla Model S was defective because it continued forward and/or accelerated without the intent or control input of decedent David W. Dryerman;

j.    The Tesla Model S was defective because despite the vehicle camera system should have detected an approaching stationary obstacle, the vehicle continued—without braking or reduction in acceleration or engine torque—into the stationary obstacle;

k.    The Tesla Model S was not crashworthy such that it was unable to absorb reasonable and foreseeable collision forces, and lacked adequate occupant protection systems;

l.    Designing, manufacturing, distributing, and selling the subject vehicle with a defective and unsafe Obstacle Aware Acceleration System;

m.    Designing, manufacturing, distributing, and selling the subject vehicle with a defective and unsafe Pedal Misapplication Mitigation System;

n.     Designing, manufacturing, distributing, and selling the subject vehicle with a defective and unsafe "Autopilot" and/or Automatic Emergency Braking System;

o.     Designing, manufacturing, distributing, and selling the subject vehicle a defective and unsafe braking system;

p.     Designing, manufacturing, distributing, and selling the subject vehicle with a defective and unsafe acceleration system;

q.     Designing, manufacturing, distributing, and selling the subject vehicle in a non-crashworthy condition;

r.     The subject vehicle did not meet or perform to the expectations of end consumers, users, or ordinary consumers;

s.     The subject vehicle did not meet or perform to the expectations of reasonable consumers;

t.     The risks inherent in the subject vehicle's safety features as designed outweighed its benefits, and reasonable alternative designs would, at reasonable cost, have reduced the foreseeable risks of harm posed by the subject vehicle; and

u.     The subject vehicle lacked adequate warnings and/or instructions of the dangers and hazardous and defective condition of the vehicle;

v.     Defendant Tesla misrepresented the safety of the subject vehicle.

62.     To the extent malfunctioning, or ill-designed, "Autopilot" and/or self-driving features was/were engaged in this case, this constitutes a defect which caused or contributed to the subject crash. Regardless, it is alleged that the "Autopilot"/self-driving systems in the vehicle

were not sufficiently developed or tuned and users were not sufficiently warned of the dangers and limitations of these features or systems.

63. The "Autopilot" and/or self-driving features and systems installed in the Tesla Model S were improperly designed and failed to function properly and/or contained design and/or manufacturing defects.

64. Had the "Autopilot" features and systems on the Tesla Model S been properly designed, tuned and/or updated, the vehicle would have remained in its lane of travel, would have detected the obstacle in front of the vehicle (bridge support), issued an audible warning to the decedent David W. Dryerman, and if the decedent failed to respond, the vehicle would have actively braked without driver input to prevent the collision that killed Plaintiffs' decedents and caused the losses and other damages to the Plaintiff Max Dryerman and the decedents' estates.

65. The subject Model S Sedan, its "Autopilot" and/or self driving features or systems, structural components, and/or occupant protection systems failed to meet the expectations of the reasonable consumer or user. Based on the representations of Tesla, an ordinary consumer or user would have expected the subject vehicle and the systems and components described herein to have appropriately detected, responded or operated to present or mitigate the subject collision and the injuries, losses, and damages arising therefrom.

66. At the time the subject Tesla Model S left defendant Tesla's possession, it was in a defective condition, was unreasonably dangerous when used in a reasonably foreseeable matter, and was not fit, suitable, or safe for its intended purposes. The subject Model S therefore constituted a defective product under the New Jersey Product Liability Act (consolidating the cause of action for negligence, strict liability, and implied warranty into a single product liability cause of action) rendering Tesla strictly liable to the Plaintiffs.

67.    A practical and feasible alternative design existed that would have reduced or prevented harm and that due to the improperly designed or omitted safer alternative, the product was not reasonably safe as manufactured or sold.

68.    Further, a reasonable consumer, including the decedents, David Dryerman, Michele Dryerman, and Brooke Dryerman, would not have reason to expect that the subject vehicle would fail to remain in its lane of travel and fail to detect, warn, and apply emergency braking to stop the car and prevent the vehicle from colliding with the concrete bridge support, would not be able to detect any such defects, and would not have any knowledge as to how to prevent the failures described herein from occurring.

69.    The 2024 Tesla Model S contained a myriad of defects in both design and/or manufacture, did not perform as an ordinary consumer would reasonably expect, its design risks outweighed its benefits, and the 2024 Tesla Model S was not sufficiently crashworthy in the event of a foreseeable crash, among other things, all factors that lead to the fatal injuries suffered by the decedents and the losses and damages suffered by Plaintiff Max Dryerman as a result of the wrongful deaths of his parents and sister.

WHEREFORE, Plaintiff Max Dryerman demands judgment against Defendant Tesla for compensatory damages, together with interest, costs of suit, and all such other relief as the Court deems proper.

## INJURIES & DAMAGES

### Survival Action Claims Pursuant to N.J.S.A. § 2A:15-3
### (New Jersey's Survival Act)

70.    As a direct and proximate result of Defendant Tesla's strict liability, negligence, wrongful conduct and wanton disregard for public safety, as set forth herein, the decedents, and each of them, experienced pain and suffering prior to their deaths, and each of decedents' estates

has suffered a loss of earnings and/or earning capacity, both past, present, and future, for which damages are claimed. Likewise, punitive damages are claimed as described above. Plaintiffs Carrie Chalup, as Executrix of the Estate of David W. Dryerman, and Renee Litwin, as Succeeding Executrix of the Estate of Michele D. Dryerman, and Administratrix Ad Prosequendum of the Estate of Brooke H. Dryerman, are entitled to recover damages from Defendant Tesla for these losses and damages which shall be proven at trial.

**Wrongful Death Claims Pursuant to N.J.S.A. § 2A:31-1**
**(New Jersey's Wrongful Death Act)**

71.     As a direct and proximate result of Defendant Tesla's strict liability, negligence, wrongful conduct and disregard for public safety, as set forth herein, Plaintiff Max Dryerman has suffered his own losses and damages caused by the wrongful deaths of his parents and sister, including loss of support and financial contributions, the loss of care, love, advice, society, and companionship of decedents David W. Dryerman, Michele D. Dryerman, and Brooke H. Dryerman, emotional distress, and funeral and burial expenses, for which damages are claimed. Plaintiff Max Dryerman is entitled to recover damages from Defendant Tesla for these losses and damages which shall be proven at trial.

WHEREFORE, Plaintiffs, and each of them, demand judgment against Defendant Tesla for applicable compensatory and punitive damages, together with interest, costs of suit and all such other relief as the Court deems proper.

**JURY TRIAL DEMANDED**

72.     Plaintiffs are entitled to and respectfully request a trial by jury.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs demand judgment against the Defendant as follows:

24

A.    On the **FIRST CAUSE OF ACTIO**N, punitive damages, interest, attorneys' fees, costs of suit and such other relief as the Court deems just and proper;

B.    On the **SECOND CAUSE OF ACTIO**N, compensatory damages, interest, attorneys' fees, costs of suit and such other relief as the Court deems just and proper; and

Respectfully submitted,

Dated: July 16, 2025                 ANAPOL WEISS

*/s/ Miriam Benton Barish*
Miriam Benton Barish, Esquire
NJ Attorney ID No. 051111995
One Logan Square
130 N. 18th Street, Suite 1600
Philadelphia, PA 19103
(215) 735-1130
mbarish@anapolweiss.com

Larry E. Coben, Esquire*
Jo Ann Niemi, Esquire*
ANAPOL WEISS
8700 E. Vista Bonita Drive, Suite 268
Scottsdale, AZ 85255
(480) 515-4745
lcoben@anapolweiss.com
jniemi@anapolweiss.com
*Application for Admission Pro Hac Vice pending*

*Attorneys for Plaintiffs*